UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID A. JACK,                           )   No. CV 09-7444-RC
                                         )
            Plaintiff,                   )
                                         )   OPINION AND ORDER
      v.                                 )
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
            Defendant.                   )
_____  )

     Plaintiff David A. Jack filed a complaint on October 20, 2009,
seeking review of the Commissioner's decision denying his applications
for disability benefits.  On March 23, 2010, the Commissioner filed an
answer to the complaint, and the parties filed a joint stipulation on
May 18, 2010.


                            **BACKGROUND**

     On August 18, 2004, plaintiff, who was born on June 24, 1969,
applied for disability benefits under Title II of the Social Security
Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income
program ("SSI") of Title XVI of the Act, claiming an inability to work

since January 18, 2001, due to bipolar disorder, depression, attention deficit disorder and a left wrist injury. A.R. 19, 133-34, 155. The plaintiff's applications were initially denied on November 22, 2004, and were denied again on March 16, 2005, following reconsideration. A.R. 102-13. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Dale A. Garwal ("the ALJ") on August 3, 2006. A.R. 51-69, 115-16. On January 10, 2007, the ALJ issued a decision finding plaintiff is not disabled. A.R. 91-101. The plaintiff sought review from the Appeals Council, which granted plaintiff's request and remanded the matter to the ALJ for further proceedings. A.R. 44-47, 128-30.

Following remand, the ALJ held another administrative hearing, A.R. 70-86, and on July 6, 2009, the ALJ issued a new decision again finding plaintiff is not disabled. A.R. 16-30. The plaintiff appealed this decision to the Appeals Council, which denied review on September 21, 2009. A.R. 7-15.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).

The claimant is "disabled" for the purpose of receiving benefits

under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1]  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since January 18, 2001, his alleged onset date. (Step One).  The ALJ then found plaintiff has the severe impairments of "affective disorder, personality disorder, and mood disorder" (Step Two); however, plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (Step Three).  The ALJ next determined plaintiff is not able to perform his past relevant work.

---

[1]  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]."  20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

1  (Step Four).  Finally, the ALJ concluded plaintiff is able to perform

2  a significant number of jobs in the national economy; therefore, he is

3  not disabled.  (Step Five).

4

5                                    **II**

6      A claimant's residual functional capacity ("RFC") is what he can

7  still do despite his physical, mental, nonexertional and other

8  limitations.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001);

9  <u>see</u> <u>also</u> <u>Valentine v. Comm'r, Soc. Sec. Admin.</u>, 574 F.3d 685, 689 (9th

10 Cir. 2009) (RFC is "a summary of what the claimant is capable of doing

11 (for example, how much weight he can lift).").  Here, the ALJ found

12 plaintiff has the RFC to:

13

14      perform a full range of work at all exertional levels that

15      is limited to the performance of simple routine tasks, and

16      the [plaintiff] has "mild" limitations in the ability to

17      perform activities of daily living and "moderate"

18      limitations in the ability to maintain social functioning

19      and the ability to maintain concentration, persistence and

20      pace.

21

22 A.R. 26.  However, the plaintiff contends the ALJ's decision is not

23 supported by substantial evidence because the ALJ erroneously rejected

24 the opinions of plaintiff's treating psychiatrist, Jennifer Heitkamp,

25 M.D.  The plaintiff is correct.

26

27     Dr. Heitkamp treated plaintiff at the Los Angeles County

28 Department of Mental Health ("DMH") from May 24, 2005, to April 16,

2008, diagnosed plaintiff as having a bipolar disorder, attention
deficit disorder, hypothyroidism and a history of amphetamine abuse,
and prescribed numerous psychiatric medications to plaintiff.  See,
e.g., A.R. 359-61, 391-92, 394-406, 408-09, 417-19, 421-22, 424-30,
436, 438, 440, 442, 444, 446, 453-54.  On June 9, 2005, Dr. Heitkamp
noted plaintiff was increasingly paranoid and had some delusional
thinking, which is how he appears prior to becoming very manic.  A.R.
360.  On June 24, 2005, Dr. Heitkamp found plaintiff remained
psychotic, delusional and paranoid, A.R. 406; however, on August 11,
2005, Dr. Heitkamp reported plaintiff was stable on his medication.
A.R. 403.  On October 6, 2005, Dr. Heitkamp noted plaintiff had
increased depression and some compulsive behaviors, A.R. 401; however,
as of February 1 and March 1, 2006, plaintiff was stable again.  A.R.
395-96.

     By April 26, 2006, plaintiff's depression had increased, A.R.
394, and on August 14, 2006, Dr. Heitkamp found plaintiff was
experiencing increased paranoia and ideas of reference.  A.R. 453.  On
August 15, 2006, Dr. Heitkamp opined plaintiff had a marked
restriction in his activities of daily living, moderate difficulty
maintaining social functioning, marked difficulty maintaining
concentration, persistence or pace, and has had four or more episodes
of decompensation.  A.R. 408-09.

     On April 26, 2007, Dr. Heitkamp found plaintiff was experiencing
increased ideas of reference and racing thoughts.  A.R. 440.  On
June 28, 2007, Dr. Heitkamp found plaintiff had increased paranoia and
some ideas of reference, and on November 15, 2007, Dr. Heitkamp again

found plaintiff appeared paranoid.  A.R. 422, 426.  On December 27, 2007, Dr. Heitkamp found plaintiff continued to be paranoid and had increased ideas of reference, and on February 28, 2008, Dr. Heitkamp noted plaintiff had more paranoid delusions and problems with ideas of reference.  A.R. 419, 421.  On March 6, 2008, Dr. Heitkamp opined plaintiff had:

> chronic depression and at times sporadic psychotic symptoms. He experiences ideas of reference often which tends to impact his abilities to interact in an appropriate way with others.  [Plaintiff] exhibits poor motivation and energy as well.  Over the years he has been on many different psychiatric medications and is currently on [W]ellbutrin for depression.

A.R. 496.

The medical opinions of treating physicians are entitled to special weight.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).  This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick, 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is

1  contradicted by another doctor, the ALJ may not reject this opinion

2  without providing 'specific and legitimate reasons' supported by

3  substantial evidence in the record." <u>Reddick</u>, 157 F.3d at 725;

4  <u>Valentine</u>, 574 F.3d at 692.

5

6      Here, the ALJ rejected Dr. Heitkamp's opinions for several

7  reasons, including that Dr. Heitkamp's treatment of plaintiff

8  "involved no more than intermittent treatment sessions."  A.R. 25.

9  This conclusory statement does not constitute a specific and

10 legitimate reason for rejecting Dr. Heitkamp's opinions.  <u>See</u> <u>Tackett</u>

11 <u>v. Apfel</u>, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out

12 in the record his reasoning and the evidentiary support for his

13 interpretation of the medical evidence."); <u>Regennitter v. Comm'r of</u>

14 <u>the Soc. Sec. Admin.</u>, 166 F.3d 1294, 1299 (9th Cir. 1999)

15 ("[C]onclusory reasons will not justify an ALJ's rejection of a

16 medical opinion."); <u>Burger v. Astrue</u>, 536 F. Supp. 2d 1182, 1187 (C.D.

17 Cal. 2008) ("[C]onclusory statements are not a specific and legitimate

18 reason for rejecting [a treating physician's] opinions").  Nor is the

19 ALJ's conclusion supported by the medical record, which shows

20 plaintiff received extensive medical treatment from DMH professionals

21 such as Dr. Heitkamp, including the prescription of medications.  <u>See</u>,

22 e.g., A.R. 290-349, 359-68, 391-701.

23

24     The ALJ also criticized Dr. Heitkamp's opinions by concluding Dr.

25 Heitkamp "appears to have taken the [plaintiff's] subjective

26 allegations at face value and merely reiterated those allegations when

27 making assertions regarding the [plaintiff's] mental health and mental

28 residual functional capacity."  A.R. 25.  This conclusion is not true,

however, as Dr. Heitkamp based her professional opinions on her personal observations of petitioner.  See, e.g., A.R. 419 (plaintiff "presented [with] more paranoid delusions" but had a linear thought process with no suicidal or homicidal ideations), A.R. 421 (plaintiff has "some mood lability [and was] tearfull [sic], angry, [and] upset"), A.R. 422 (plaintiff "appeared paranoid in the office – looked over his shoulder often, was agitated with the security guard"); see also Ryan, 528 F.3d at 1199-1200 ("[A]n ALJ does not provide clear and convincing reasons for rejecting [a] . . . physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.").  Indeed,

> [c]ourts have recognized that a psychiatric impairment is
> not as readily amenable to substantiation by objective
> laboratory testing as is a medical impairment and that
> consequently, the diagnostic techniques employed in the
> field of psychiatry may be somewhat less tangible than those
> in the field of medicine.  In general, mental disorders
> cannot be ascertained and verified as are most physical
> illnesses, for the mind cannot be probed by mechanical
> devices in order to obtain objective clinical manifestations
> of mental illness. . . .  *[W]hen mental illness is the basis*
> *of a disability claim, clinical and laboratory data may*
> *consist of the diagnoses and observations of professionals*
> *trained in the field of psychopathology*.  The report of a
> psychiatrist should not be rejected simply because of the
> relative imprecision of the psychiatric methodology or the

1    absence of substantial documentation, unless there are other

2    reasons to question the diagnostic technique.

3

4    Sanchez v. Apfel, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000) (emphasis

5    added; citations omitted); Rodriquez v. Bowen, 876 F.2d 759, 762 (9th

6    Cir. 1989); see also 20 C.F.R. §§ 404.1528(b), 416.928(b)

7    ("Psychiatric signs are medically demonstrable phenomena that indicate

8    specific psychological abnormalities, e.g., abnormalities of behavior,

9    mood, thought, memory, orientation, development, or perception.  They

10   must also be shown by observable facts that can be medically described

11   and evaluated.").  Therefore, this also is not a specific and

12   legitimate reason for rejecting Dr. Heitkamp's opinions.

13

14       Finally, the ALJ also rejected Dr. Heitkamp's opinions as

15   "completely inconsistent with the reports of the objective medical

16   consultants, the report of the objective consultative examiner, and

17   the record taken as a whole."  A.R. 25.  However, since the ALJ did

18   not cite such alleged inconsistencies, this reason also is conclusory

19   and insufficient to reject a treating physician's opinions.

20   Regennitter, 166 F.3d at 1299; see also Embrey, 849 F.2d at 421 ("To

21   say that medical opinions are not supported by sufficient objective

22   findings or are contrary to the preponderant conclusions mandated by

23   the objective findings does not achieve the level of specificity our

24   prior cases have required. . . .").  Moreover, Dr. Heitkamp's opinions

25   cannot be inconsistent with the record as a whole when the majority of

26   plaintiff's medical records are from Dr. Heitkamp and other DMH

27   professionals.  For instance, on August 10, 2004, Aleksey

28   Chetverukhin, M.D., another of plaintiff's treating physicians at DMH,

diagnosed plaintiff as having a bipolar disorder and determined

plaintiff's Global Assessment of Functioning was 38, A.R. 334-39,

which indicates "[s]ome impairment in reality testing or communication

(e.g., speech is at times illogical, obscure, or irrelevant) or major

impairment in several areas, such as work or school, family relations,

judgment, thinking, or mood (e.g., depressed man avoids friends,

neglects family, and is unable to work; child frequently beats up

younger children, is defiant at home, and is failing at school).

American Psychiatric Ass'n, Diagnostic and Statistical Manual of

Mental Disorders, 34 (4th ed. (Text Revision) 2000).  In reaching this

conclusion, Dr. Chetverukhin observed plaintiff and noted he was

agitated, guarded and suspicious, his recent and remote memory were

impaired, he was dysphoric and irritable and had sad affect, his

insight and judgment were severely impaired, he was experiencing

excessive guilt and worry, he was aggressive, uncooperative, violent,

destructive, and self-destructive, and he had excessive and

inappropriate displays of anger and poor impulse control.  A.R. 338.

     When the ALJ "fails to provide adequate reasons for rejecting the

opinion[s] of a treating . . . physician, [this Court] credit[s]

th[ose] opinion[s] 'as a matter of law.'"  Lester v. Chater, 81 F.3d

821, 834 (9th Cir. 1996)(citations omitted); Widmark v. Barnhart, 454

F.3d 1063, 1069 (9th Cir. 2006).  Properly crediting Dr. Heitkamp's

opinions, it is clear that substantial evidence does not support the

RFC assessment.  Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir.

2007); Widmark, 454 F.3d at 1070.  "Nor does substantial evidence

support the ALJ's step-five determination, since it was based on this

erroneous RFC assessment."  Lingenfelter, 504 F.3d at 1041.

**III**

"[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004). Here, as the ALJ recognized, A.R. 25, Dr. Heitkamp's opinions show that plaintiff meets or equals Listing 12.04 -- Affective Disorders.[2]  Thus, this Court "remand[s] for

---

[2]  Listing 12.04 provides, in pertinent part:

*Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.  [¶] The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied. [¶]   A. Medically documented persistence, either continuous or intermittent, of one of the following: [¶] 1. Depressive syndrome characterized by at least four of the following: [¶] a. Anhedonia or pervasive loss of interest in almost all activities; or [¶] b. Appetite disturbance with change in weight; or [¶] c. Sleep disturbance; or [¶] d. Psychomotor agitation or retardation; or [¶] e. Decreased energy; [¶] or f. Feelings of guilt or worthlessness; or [¶] g. Difficulty concentrating or thinking; or [¶] h. Thoughts of suicide; or [¶] i. Hallucinations, delusions, or paranoid thinking; or [¶] 2. Manic syndrome characterized by at least three of the following: [¶] a. Hyperactivity; or [¶] b. Pressure of speech; or [¶] c. Flight of ideas; or [¶] d. Inflated self-esteem; or [¶] e. Decreased need for sleep; or [¶] f. Easy distractibility; or [¶] g. Involvement in activities that have a high probability of painful consequences which are not recognized; or [¶] h. Hallucinations, delusions or paranoid thinking; [¶] Or [¶] 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of

---

12

1    payment of benefits." <u>Lester</u>, 81 F.3d at 834; <u>Ramirez v. Shalala</u>, 8
2    F.3d 1449, 1455 (9th Cir. 1993).

3

4                                      **ORDER**

5        IT IS ORDERED that plaintiff's request for relief is granted, and
6    the Commissioner shall award both Title II and SSI disability benefits
7    to plaintiff.

8

9    DATE:   <u>November 22, 2010</u>         <u>/S/ ROSALYN M. CHAPMAN</u>
10                                  ROSALYN M. CHAPMAN
                                UNITED STATES MAGISTRATE JUDGE

11 _____

12       both manic and depressive syndromes (and currently
       characterized by either or both syndromes); [¶] And B.
13       Resulting in at least two of the following: [¶] 1.
       Marked restriction of activities of daily living; or
14       [¶] 2. Marked difficulties in maintaining social
       functioning; or [¶] 3. marked difficulties in
15       maintaining concentration, persistence or pace; or [¶]
       4. Repeated episodes of decompensation, each of
16       extended duration. [¶] OR [¶] C. Medically
       documented history of a chronic affective disorder of
17       at least 2 years' duration that has caused more than a
       minimal limitation of ability to do basic work
18       activities, with symptoms or signs currently attenuated
       by medication or psychosocial support, and one of the
19       following: [¶] 1. Repeated episodes of decompensation,
       each of extended duration; or [¶] 2. A residual
20       disease process that has resulted in such marginal
       adjustment that even a minimal increase in mental
21       demands or change in the environment would be predicted
       to cause the individual to decompensate; or [¶] 3.
22       Current history of 1 or more years' inability to
       function outside a highly supportive living
23       arrangement, with an indication of continued need for
       such an arrangement.
24

25

26

27    20 C.F.R. § 404, Subpart P, App. 1, Listing 12.04.

28    R&R-MDO\09-7444.mdo
     11/22/10